We'll call the next case, which is SRP versus the United States of America and the National Park Service. I would like to take this opportunity to apologize to the court and to my colleagues for my tardiness this morning. That apology will be accepted. Thank you. We thought maybe you were on the seaplane, but we see that you're from Christianstead, so that couldn't have been the case. No, I'm a creature of habit, and although intellectually I was aware that we were checking in at 9 and starting at 9.30, normally arguments check-in is at 9.30 and at 10, and my brain twisted it this morning, so I do apologize. I was here at 9.30 expecting to sign in. Well, why don't you get started. Thank you. Good morning again, Your Honors, colleagues. My name is Pamela Colon, and I represent the appellants in this matter. I would like to reserve five minutes for rebuttal. That request will be granted. Thank you, sir. As Your Honors are aware, this is a matter that occurred out at Buck Island, one of the most beautiful spots we have here in St. Croix. It is a national monument that is under the jurisdiction of the National Park Service. This happened in May, May 9th of 2004, and it involved a miner who was a 10-year-old boy at the time. The miner was traveling to Buck Island with friends and family on a private vessel, and he was partaking in the festivities of the day, enjoying the island, and was walking along the shoreline when he sat down on the beach on the shoreline, but his feet were in the surf, and at that time, a barracuda attacked him and severed his third and fourth toe almost completely and caused lacerations to his second and fifth toe. The court in this matter, the district court, has determined that the United States was not responsible because the court first determined that, as a factual matter, the United States did not have sufficient knowledge prior to this occurrence that barracudas could pose a hazard or a risk to people at the shoreline. That is an inaccurate and unsubstantiated and unsupported finding of fact by the trial court, and it is the one that was arrived at by applying an incorrect standard of law. First of all, the court took a look at this 12B1 motion for lack of subject matter jurisdiction, and rather than treating it as one that involves the substance of the case or the merits of the case, which it did, it took a look at it instead as a facial or technical matter, and at minimum, an evidentiary hearing should have been held, although it is the appellant's position that there were sufficient facts in the record to establish exactly contrary to what the court found, that is, National Park Service did in fact have plenty of knowledge that barracudas and admitted that barracudas were a hazard to people at the shoreline. In addition to that, the court sort of put on its head the burden of proof in this case. Typically, a plaintiff does have a burden of proof of establishing subject matter jurisdiction, but in a case where the defense from the United States is the discretionary function exception to the Federal Tort Claims Act, it then becomes the government's burden of proof. And didn't the government put on that evidence? The evidence... The rules and regulations that demonstrated the discretion of the Park Service in determining what signage was necessary and determining how to deal with risk. It did, but under the case law, once it's made that determination that it is in fact going to warn, then it is no longer a discretionary function. And quite honestly, we don't feel that it was a discretionary function here in the first place. That is because the case law has established time and time again that when there is a known risk and there was a known risk here, the Park Service had an obligation, a duty, a mandate, not a discretion, to warn of that known risk. And we feel that the district court's decision is premised on an improper finding of fact that the National Park Service was not aware of this risk. Now, if you look at the record, you have Joel Tutine, who is the longtime superintendent of the park, acknowledging, first of all, that in 2001, I believe it was, the national monument was created and there was a mandate that the no fishing area be expanded. That they implemented that mandate starting in 2003 and continued it into 2004. And by the time they were done, they had included 19,000 square acres surrounding the monument where no fishing was going to be allowed. And that was a significantly larger area than previously where fishing had been prohibited. Joel Tutine and also Xandy Starr Hollis acknowledged, they both acknowledged, that it was the goal of the National Park in creating and dealing with that mandate and implementing that mandate that they would increase the amount of barracudas in the National Park area, in the monument area, to the island. In the last 22 years prior to the attack on this piece, there has been one barracuda attack in the area? That is all that they provided records for. And that was all that they were throwing food into the water? That's correct. I mean, is that really a peril that is significant? Well, first of all, it's not whether or not the peril is significant. For example, I believe it was in summers, the Ninth Circuit found that there was a ring of rocks that was used, hot coals used to form a ring of fire. And no one had ever stepped on those before either. But because there was a risk of serious bodily injury, that was known to the National Park Service. Their failure to warn in that case was exempted from discretionary function. If the peril isn't significant, picking up on Judge Urata's point, if the peril, as you say, isn't significant, then what should have been done here? There was a warning in the brochure. There was signage close to where this unfortunate incident occurred. What more should have happened? I'm not saying that the peril was not significant. It was. I mean, a barracuda attack can and did and does create very serious bodily injury. Well, I guess the point that Judge Roth was making, one attack, though regrettable, in 22 years, obviously a barracuda is significant, but at least numerically it's not a risk that, you know, oh, my God, let's clear the beach, I guess is the point. That is agreed, but this was the second time this happened, and it was the second time within the expansion of the park. Now, you have to realize that temporally it's important to understand when they implemented the expanded no fishing zone. They knew they were going to attract more barracuda, and they did. But what is it that should have happened? They should have had more specific warnings rather than just the general warning that was the brochure that they had, first of all, only warned generally that you may encounter barracuda. And it was directed, that warning was directed to snorkelers. There was nothing within the brochure that even gave anybody the slightest idea, if you were walking on the beach or sitting on the beach, that you could encounter a barracuda. What about National Park Service 2001 management policy, which states that the means by which public safety concerns are to be met is left to the discretion of superintendents and other decision makers at the park level who must work within the limits of funding and staffing. Examples include decisions about whether to install warning signs. Now, isn't that a duty put to the discretion of the park? But once you warn, you've got an obligation to not warn negligently, and that is the crux of the plaintiff's case. But you put up 2,000 signs, or do you put up one sign? Isn't that within the discretion of the park service to determine how many signs to put, where to put them, what to describe on the signs? I would argue that under the case law, it is not. First of all, you have, like we said earlier, if you have a known danger, and very specifically, Mr. Toutain, Superintendent Toutain said he knew that you could encounter barracuda, and he knew before this attack that you could encounter barracuda at the shoreline. I've been snorkeling in the British West Indies where I'm not in the National Park, and I've seen barracuda from the distance, but, you know, I haven't felt, and maybe my own personal experience isn't that significant, but that barracuda, when you're snorkeling, when you're in the water, are not that great a threat to humans. As a snorkeler, you would expect to encounter them, and that was the warning that was given. But I don't think, Your Honor, even in your own personal experience, and certainly there is nothing to indicate here that this boy or any member of the public in general would expect that while they're sitting on the beach with their feet in the surf that they would be attacked by a barracuda. Isn't there a point where too many warnings could lead people not to pay attention to any of them, and isn't that part of what the discretionary function exception is all about? I don't think so, Your Honor, and certainly that wouldn't apply here because the manner in which this warning was given, it was directed solely to snorkelers. Now, you might say, okay, that's also swimmers because swimmers are snorkelers, but somebody sitting on the beach. But the district court found that there was nothing to alert the National Park Service that there was a danger to shallow water bathers. But both Zandy Starr-Hollis and Superintendent Tutine acknowledged that there was. But wasn't their testimony, wasn't the first person's testimony, relating to the fact that the fisherman had his legs over the boat? And isn't that what he was referring to? I think if you look at the record, that's what she was referring to. But later in her testimony, Your Honor, she also testified that she was well aware that you could, as a human, encounter the barracuda at the shoreline and at the shallows. And she said she well knew, well knew of that. You think because of that testimony, the district court's finding was clearly erroneous? Along with Superintendent Tutine's testimony to the very same fact, yes. We'll have you back on the bottle. Thank you. Mr. Sturgill. May it please the Court, I'm Lowell Sturgill from the Department of Justice representing the United States. The district court correctly dismissed this case under the discretionary function exception, which has two steps, as you well know. The first step is whether there is any clear policy, mandatory policy, creating a specific duty on the part of federal employees to take the action that the plaintiff says was not taken. The district court looked at that step, and it found that there was no such policy imposing a specific mandatory duty with respect to the warning of swimmers or shore bathers with respect to the presence and danger of barracuda. In fact, as Judge Ruff has just pointed out, to the contrary, the applicable National Park Service policy specifically states that that matter is a matter of discretion. It's left at the discretion of local park officials. And also, as we pointed out in our brief, it's even more than that. At page 498 of the Joint Appendix 2, what that says is that warning signs should be held to the minimum number, size, and wording required. So the Park Service policies go beyond even the question of whether to use signs. They go to the precise question at issue in this case, and that is what wording is used in signs. I also would point out with respect to the first step what is the exact wording of the signage on the beach? You can find that at page 701 of the Joint Appendix. And it says, first of all, there's a caption which says, Safety Tips for Sea and Shore. Now shoreline, we know from the record from the Hill of Stars deposition, includes the shallows.  So at the very top of the warning, there's a specific notice that barracuda can be found at the shore. Then if you drop down, you'll find also sort of a subheading. It says, Reef and Marine Hazards. Well, marine, again, means water. So the plaintiff admits that he was bitten in the water. The water happened to be at the shore, but it was water nonetheless. And then following on, I'd be happy to read this. The shallows and reefs near shore contain sharp coral, stingrays, and various other animals. Portuguese men-of-war and sea wasps, both stinging jellyfish, are rarely found there. Barracudas and sharks, if encountered, should be treated with caution, but are not usually aggressive towards snorkelers. Now what they focus on is the fact that it says, not usually aggressive towards snorkelers. And I believe their argument would be it should have said snorkelers and shore baiters. And I think on the merits, the question would be whether the warning was sufficient. And the fact that it said shore on it would make it sufficient. But you don't have to get to that question because, again, under discretionary function, there are really just two antecedent kinds of questions. What do the policies say? Do they create a mandatory duty, a specific mandatory duty? And they don't here. And not only do they not create a mandatory duty, they specifically say that the question of wording of signs is devoted to the discretion of local officials. Mr. Sturgill, I have a concern about the way in which the district court approached this. And clearly the government bears the burden of proving the applicability of the discretionary function exception. But it appears to me that the district court evaluated the sufficiency of the appellant's evidence. And isn't that contrary to the way our court has said cases like this, at least jurisdictionally, should be reviewed? Well, not at all, Your Honor. I believe if you look at the court's opinion, it exactly tracks the way this court has said this is supposed to happen. This is explained in our brief. But basically, under the Mortenson decision, what the cases say is in a case like this where the government is making a factual attack on a complaint, the plaintiff is wrong. The government's attack was not a facial attack. We did not take the allegations of the complaint as true and say we would anyway. We challenged the allegations of the complaint by putting evidence in the record. And what the district court said is in that kind of a scenario where the government is challenging the facts and where there's ample opportunity for full discovery, as there was here, and in that kind of a context, the court is supposed to find the facts. It is supposed to assure itself that it has jurisdiction. And that is what the court did here. Now, the cases also say, and the district court acknowledged, that when a jurisdictional issue is inclined with a merits issue, as is the case here, the court is supposed to require less in the way of jurisdictional proof than it would at trial on the merits. Do you think the court adhered to that? It did. First of all, it stated that it did. And second, when you look at the evidence and the court's treatment of the evidence, you'll find that it did. The key point, as Judge Roth has noted, is that with respect to the specific known risk issue, is that in the 22 years prior to this event, there had never been a single barracuda attack at the shoreline. Now, that's the plaintiff's claim, is that the warnings should have been specific to the shoreline. Well, there had not been a single attack at the shoreline in the prior 22 years. And the only prior attack that there had been was offshore when, as we discussed, a boat captain poured fish oil on his toes and then put his toes in the water, thus creating a specific hazard for fish. Mr. Sturgill, I want to refer you to Section 1346B, actually to Section 2680, the exceptions, where the discretionary exception is found. It says that any claim based upon an act or omission of an employee of the government exercising due care. I don't see anywhere in this argument, either before the district court or here, that anybody has focused on whether or not the government exercised due care, which seems to me to be a predicate for the ability of the government to claim the exception. Well, this Court's cases have never read the discretionary function exception as requiring the government to prove due care, because to do that would essentially skip over— Well, again, I think the statute is sort of presuming that the due care and merits issue is resolved in favor of the plaintiff so you can then get to the preceding question. So under discretionary function, you assume that the plaintiffs can prove their case on the merits. Then you ask, do you even get to that? Okay, so that's your answer to it. Yes. All right. And with respect to the burden of proof, the district court got that right, too. The court said—and it's a little bit like a tennis match. The government is moved to dismiss. The plaintiff has the burden to prove that the court has jurisdiction, but the government has the burden to prove the discretionary function exception applies, and the district court acknowledged that and applied that burden. With respect to step two, the question of whether the question is susceptible of policy analysis, this court has said in the Miranda and Mitchell cases that in this kind of a context where you have a wilderness area, the identification of specific risks to humans and the question of how to respond to that specific risk raises policy questions. The district court then applied that correctly and it said, well, one of the questions, as I think Judge Fischer, you may have mentioned if I got this right, is the issue about unnecessary warnings and how having too many warnings can numb all visitors to even reading the brochure or the sign at all. That consideration was recognized by the Tenth Circuit in the Elder case, which I believe is the case that's most closely on point to this case, even though it is from another circuit. That was the case where there was a waterfall and the child walked into the stream, passed the signs and said, don't go in the stream, and then slipped and fell into the waterfall. The claim in that case was that the signs weren't specific enough. They should have said, look, there's algae on the stream. He might slip because that's why he slipped. He slipped on the algae. What the court said is, well, at that level of detail, the discretionary function protects the government because otherwise you could just have signs that address every specific risk, could make a sign that's so large that it would spoil the natural beauty. Then just the question of what sorts of warnings was never meant to be covered by – not to be within the discretionary function of exception. Those two cases, the Elder case and the Miranda case, we think are controlling on it. Miranda, I think, is very close on point, too. That case was the case where it was a national park area and a tree, a dead tree, fell on a driver. What the court held was discretionary function protected the government's failure to identify the tree. With respect to the specific known risk doctrine, Miranda was right on point because the court acknowledged that, well, the government certainly knew that there were a lot of dead trees in the area. The question was, what's the appropriate response to that? The government in that policy had a windshield inspection policy. You drive down the road, look around, and what the plaintiff said was, well, all the government was doing was ineffectively implementing that policy. The court said, no, discretionary function applies because the identification and response to that kind of issue is covered by DF. I thought, just to finish up, I would go through the list of points that plaintiff's counsel made. She said the district court looked at this as a facial challenge. It didn't. We've been through that. She said there should have been a hearing. Well, the case law says that the question of whether there should be a hearing is within the district court's discretion. There's no abuse of discretion here, no need for a hearing. In fact, as we've said, the court allowed full discovery in this matter, much more discovery than typically happens on a discretionary function issue. She had a chance to pose anybody she wanted, and the case was really ready for trial and ready for a full determination by the district judge. She hasn't identified any piece of evidence that she wasn't allowed to develop, no argument she wasn't allowed to make. The district court switched the burden of proof. That's not right. The Park Service admitted barracuda is a risk at the shoreline. Again, well, in the most general sense, in the sense that, for example, in Miranda, the government admitted that trees on a road can die and fall. Well, sure, but that doesn't mean that the government has admitted a specific known risk. Here again, there was no knowledge of a specific known risk because there hadn't been any of these attacks at the shoreline in the last 22 years. Is that counsel's statement that the two witnesses indicated in their deposition that they did know that there was a risk? Well, again, the question is the level of generality. Certainly, they admitted that, and that's why there's a sign. Barracuda can present a theoretical hypothetical risk to somebody in the same way. For scuba divers? Well, it says swimmers at the shore. But again, that doesn't matter because the question is not at the merit stage, was the warning adequate? The question is, is this a matter for the government's discretion? And that's the question that, again, if you have too many warnings, you can dull people to even reading these signs at all, and then you have a real problem. I've forgotten what – I was going to do something else. I forgot what it was. Pardon me. Oh, and then the question about the fact that the government expected more barracuda at the shore because they closed the area to fishing. The district court, again, expressly and specifically looked at that point, and what it held was, well, the fact that there might be more barracuda in the area doesn't mean that they presented a specific donor risk known to the government because, again, if there hadn't been any barracuda attacks at all, the fact that you have a few more or a lot more barracuda doesn't really change the analysis. Plus, the court said there was even dispute among – the record's not clear about whether there were more barracuda or not. One of the government witnesses testified he thought there might be, and the other one said not. But this is clear error review, as the CNA case from this court says, and there's no clear error in the case. I believe that that is all we have. Oh, and again, the final thing is the cases from this circuit that we've distinguished in our brief, the Sestanero and Gotha cases, there's an exception if there is a specific known risk and if responding to that risk would just require the government to take some kind of garden variety action like putting up a rail or something. But Sestanero is distinguishable in the specific known risk, and the facts of these cases really make the doctrine because the principles are sort of general, but look at the facts. Sestanero was an accident – it was an injury, a crime, in a parking lot here in downtown Christchurch that I believe it was. And the government had been on specific notice on numbers of warnings that there had been crimes committed in that lot. So that was the specific known risk. There were multiple warnings of the specific thing happening in that lot, and that's what you don't have in this case. And then Gotha was just putting up a rail. It didn't involve a wildlife area or anything like that involved in this case. So those are the main cases that they cite. If there are no further questions, we would ask the Court to affirm the judgment below. Thank you, Mr. Sturgeon. Ms. Kolan? Contrary to my colleague's argument, there were very specific knowledge imparted and acknowledged and admitted by the National Park Service employees in this matter. At the Joint Appendix 791 and at 653, they acknowledged that they were aware that the barracudas presented a hazard to humans and could be encountered not just by snorkelers in the water, but also by visitors located in the first several feet of shoreline. What's your response then to his recitation from the warning specifically, where I believe he quoted the warning as referring to sea and shore? The signage at the beach, he said, was with regard to both sea and shore. Yes, the heading says, Safety Tips for Sea and Shore, and that's a very broad heading, and it captures that page of the brochure. Isn't that part of the signage? I thought my question to him was not about the brochure. It was about the signage at the beach. I'm sorry, Your Honor. The signage at the beach is the brochure. All they did was erect a bulletin board or a piece of wood and stapled or encased the brochure to it. So the brochure and the signage at the beach is one and the same. I'm sorry if that was not clear. But in any event, so the brochure and the signage has this general category or general heading, and it then says, Reef and Marine Hazards in Bold Print, and the first sentence is what's key here. It says, Shallows and Reef Near Shore, and this is the only place in the entire page that the arrow of shallows and reef near shore are addressed. The finishing of that sentence says, Contained sharp corals, stingrays, spiny sea urchins, flower coral, fireworms, and barbed snails. It would have been very easy, extraordinarily easy, for the National Park Service to add to that barracudas. All they have to do to make this a sufficient warning to people who were at the shore is say, In addition to all those things that they listed, barracudas, because they knew barracudas were there. What would that have done? That would have altered the expectation of the plaintiff and the people that were there monitoring the plaintiff's behavior. There would have raised an awareness that you could get your foot bit while you were on the beach, not just while you were in the water. So with one attack in 22 years or somewhere thereabouts, adding barracuda to the list of fish or wildlife, however you want to describe it, would have altered actions by people at the shore. It would have altered expectations and therefore altered actions because there would be an awareness. This is almost a misrepresentation by omission. It is a misrepresentation by omission. So the people should not have waded in the shallow water? Not without a heightened awareness of the risk of being bit by a barracuda. Perhaps they would have worn aqua socks. The kid didn't see the barracuda. Not until afterwards, that's correct. So how would your heightened awareness for barracuda have prevented the attack if he was bitten before you even saw it? You might not have walked or waded through that surf. You would have walked higher up the beach and not have just sat there. And actually he was sitting with his feet in the water. He would have sat further up the beach if he thought that he could have been bit. Well, but he thought he could have hit a poison coral or various other problems and that didn't keep his feet in the water. Well, at that area where he was, he was at the beach, actually at the beach and not in the rocky portion of the island where you could encounter these other things. He was on a sand beach, sitting in the sand. And by the way, that's the area of the beach that the National Park Service directs people to go to. There are certain areas of the island or the monument that people aren't allowed to go to. And what they encourage is that you go to this area. So here they are drawing people to that area, wanting them to partake in the monument there where there is a risk that they knew about but did not warn simply by adding barracuda. Now, the question... We don't get to this discussion, I presume, if we find that discretionary function exception applies. Well, see, that's where I think the court has turned. I see my time is up, but if I can answer the question. No, please answer the question. I think the court has turned the question on its head. The district court said the discretionary function did not apply because there was not a known hazard. Because if there is a known hazard, it's no longer discretionary. And we have shown there was a known hazard. Therefore, it was not discretionary, it was mandated, and it could have been easily accommodated simply by changing the wording of the brochure itself. That would have been sufficient, but that was not done. And therefore, we are requesting that this court  and remand this matter for decision on its merits. Thank you. We thank counsel. We thank both counsel for excellent arguments, and we'll take the matter under advisement.